```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

DWAYNE MILLER,                )
                              )
            Petitioner,       )
                              )
      v.                      )     No. 4:09 CV 1385 HEA / DDN
                              )
MICHAEL BOWERSOX,             )
                              )
            Respondent.       )

**REPORT AND RECOMMENDATION**

This action is before the court upon the petition of Missouri state prisoner Dwayne Miller for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned recommends that the petition for a writ of habeas corpus be denied.

**I.  BACKGROUND**

On August 29, 2003, a jury in the Circuit Court of the City of St. Louis found petitioner Dwayne Miller guilty of one count of first-degree murder, one count of armed criminal action, and one count of first-degree attempted robbery. (Doc. 14, Ex. L at 71-73.)

On October 24, 2003, the trial court sentenced petitioner to life imprisonment for the first-degree murder, 25 years for the armed criminal action, and 15 years for the first-degree attempted robbery, with the sentences to run concurrently. (Id. at 99-101.)

On January 11, 2005, the Missouri Court of Appeals affirmed the petitioner's convictions on direct appeal. State v. Miller, 162 S.W.3d 7 (Mo. App. E.D. 2005); Doc. 14, Ex. Q. On August 5, 2005, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Doc. 11, Ex. A at 4-11.) Hearings were held on November 16 and November 30, 2007. (Id., Ex. B at 1-63.) On March 18, 2008, the Circuit Court denied the motion for post-conviction relief.

(Id., Ex. A at 138-48.) On March 10, 2009, the Missouri Court of Appeals affirmed. (Id., Ex. E )(summary opinion and supplemental memorandum).

In denying petitioner's direct appeal from his convictions, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, thus:

> Lisa Thomas (Thomas) was walking with her daughter to a restaurant near her house. On her way, Thomas saw Paul Henley (Henley), an acquaintance with whom Thomas had been doing errands earlier in the day, and [petitioner] in a vacant lot next to her house. Thomas overheard part of a conversation between the two men in which they made reference to black tar heroin and her brother, Cornelius Dukes (Dukes), a drug dealer. Testifying under a plea agreement, Henley corroborated those observations, testifying that he met [petitioner] on a vacant lot, where they discussed robbing Dukes. Earlier in the day, Thomas had bought a box of sandwich bags for Dukes to use to package some black tar heroin and brought the box to Dukes's house. Henley was with Thomas when she did this errand, but he remained in the car.
>
> Later that evening, [petitioner] and Henley went to Dukes's house. They followed Renee Spann (Spann), Dukes's girlfriend's mother, who also lived in the house, into the house when she returned home. Both men were brandishing guns when they entered the house. [Petitioner] held a semiautomatic pistol and Henley held a .38 caliber revolver.
>
> [Petitioner] demanded money and/or drugs from Dukes. Dukes walked into the bedroom, retrieved a small amount of crack cocaine, and gave it to [petitioner]. [Petitioner] demanded more drugs, and he and Dukes began scuffling. Tracy Alston (Alston), Dukes's girlfriend, who also lived in the house, grabbed their two children and fled towards the back door of the house, along with Spann.
>
> [Petitioner's] gun was pointed towards Dukes's abdomen, and Spann heard a gunshot as she saw the two men struggling. Henley fired a shot, hitting Dukes in the leg. [Petitioner] and Dukes continued wrestling, and Henley fled from the house. As Alston reached the back door, she heard three gun shots, and Henley also heard three gun shots as he fled from the house.
>
> After a few moments, Alston returned to the house and saw Dukes staggering outside into the front yard. Dukes was taken to a hospital, where he was pronounced dead. Dukes had been shot five times: once in the back, with the bullet entering the abdomen; once in the back of the shoulder; and

three times in the thigh.  The cause of death was determined
to be a gunshot wound to the abdomen.  Police recovered three
shell casings from a nine-millimeter semiautomatic pistol and
one projectile of indeterminate type from the scene.

   Later, detectives interviewed Spann and Alston and
showed them a photo array, from which both women identified
[petitioner].  After his arrest, Henley also identified
[petitioner] from a photo array as the man who shot Dukes.
Alston had no doubt that [petitioner] was the man who entered
her house with a pistol and got into a wrestling match with
Dukes.  Alston had seen [petitioner] at her house a few months
before the shooting, engaged in a conversation with Dukes,
during which Dukes did not seem fond of [petitioner].  The
police also interviewed Thomas, and she told them that she
overheard a conversation between Henley and [petitioner] after
the shooting in which Henley told [petitioner] "that he didn't
have to shoot him or he wasn't supposed to shoot him."

State v. Miller, 162 S.W.3d at 10-11.

## II.  PETITIONER'S GROUNDS FOR FEDERAL HABEAS CORPUS RELIEF

Petitioner alleges five grounds for relief in this habeas action:

(1) The trial court erroneously sustained the state's Batson[1] challenge to petitioner's peremptory strike of a white juror.

(2) The trial court erred in overruling petitioner's Batson challenge to the state's peremptory strikes of two African American jurors.

(3) The state committed a Brady[2] violation by not disclosing all of the police reports and photo spreads.

(4) Petitioner's trial counsel rendered constitutionally ineffective assistance for failing to investigate and request any police reports or copies of photo spreads shown to witnesses the night of the murder.

(5) Petitioner's trial counsel was constitutionally ineffective for failing to contact Detective Rodebaugh as a potential trial witness.

(Doc. 1.)

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986).

[2] Brady v. Maryland, 373 U.S. 83 (1963).

- 3 -

Respondent contends the all petitioner's grounds for federal habeas relief lack merit. Respondent also contends that petitioner's Ground 2 is procedurally barred, because it was not raised in his motion for a new trial.

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law, for asserting grounds for relief on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims now remains available to petitioner. See Mo. S. Ct. R. 29.15(b)(post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or sentence is filed; if no appeal, 180 days from the date the person is delivered to the department of corrections); Mo. S. Ct. R. 81.04(a) (a notice of appeal must be filed within 10 days after circuit court judgment becomes final).

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).

In his motion for new trial, petitioner failed to argue his federal Ground 2, that the trial court erred in overruling his Batson challenge to the state's peremptory strikes of the two white jurors, Alexander and McCain. (Doc. 14, Ex. L at 82-84.)

However, petitioner raised Ground 2 in his brief on direct appeal to the Missouri Court of Appeals. (Id., Ex. N at 21-22.) The Missouri Court of Appeals held that, because this claim was not raised in his motion for new trial, petitioner failed to preserve it for appellate review. (Doc. 14, Ex. Q at 12.)[3]

A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds. Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004). Federal courts generally may not review a state court's denial of a petitioner's federal constitutional claim "if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Nevertheless, petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Coleman, 501 U.S. at 749-50. See Wooten v. Norris, 578 F.3d 767, 777 (8th Cir. 2010) (applying cause-and-prejudice analysis under similar circumstances).

To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples, 132 S. Ct. at 922; Coleman, 501 U.S. at 750-52.

---

[3]As addressed below, even though the Missouri Court of Appeals held the ground was not preserved for appellate review, and did not merit review for plain error, it nevertheless reviewed the ground and concluded that the trial court did not clearly err by denying petitioner's Batson challenge to the state's peremptorily striking Alexander and McCain. (Doc. 14, Ex. Q, at 12.)

To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); <u>see also</u> <u>Charron v. Gammon</u>, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under <u>Strickland</u>").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. <u>Murray v. Carrier</u>, 477 U.S. 478, 495-96 (1986). A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim. <u>Id.</u> at 316. The requirement set forth in <u>Schlup</u> means that a habeas petitioner must "come forward not only with new reliable evidence which was not presented at trial, but [] come forward with new reliable evidence which was not available at trial through the exercise of due diligence." <u>Kidd v. Norman</u>, 651 F.3d 947, 953 (8th Cir. 2011).

Petitioner has not alleged that any external factor prevented him from raising his claim that the trial court erred in overruling his federal Ground 2 <u>Batson</u> challenge to the state's peremptory strikes. Nor has he asserted his actual innocence or demonstrated that failure to review his claims would represent a "fundamental miscarriage of justice." <u>Schlup</u>, 513 U.S. at 324.

Nevertheless, Congress has authorized the court to consider and deny barred grounds for relief on their merits, if the court concludes that the grounds are without merit. 28 U.S.C. § 2254(b)(2). As stated above, respondent asserts, and the undersigned agrees, that none of petitioner's federal grounds for relief have merit.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or ... decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 130 S. Ct. 1171, 1174 (2010) (per curiam) (citation omitted). This standard is "difficult to meet" because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 130 S. Ct. at 1174.

A state court's factual findings on a habeas petitioner's federal grounds are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 130 S. Ct. 841, 845 (2010). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that the state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 130 S. Ct. at 845.

## V. DISCUSSION

**GROUNDS 1 and 2**

Under Batson, the government violates the Equal Protection Clause of the federal Constitution when it exercises its peremptory challenges to strike potential jurors on account of their race. Batson v. Kentucky, 476 U.S. at 84. The Supreme Court has set forth a three-step process to determine the validity of peremptory strikes by the prosecutor: (1) the defendant must make a prima facie showing that the state exercised a peremptory strike because of race; (2) if such a showing is made, the burden shifts to the state to articulate a race-neutral explanation for striking the prospective juror; and (3) the trial court must decide whether the defendant has proven purposeful discrimination. Id. at 94-98; Snyder v. Louisiana, 128 S. Ct. 1203, 1207 (2008); accord Miller-El v. Cockrell (Miller-El 1), 537 U.S. 322, 328-39 (2003).

**1. GROUND 1**

In Ground 1, petitioner claims that the trial court erroneously sustained the state's Batson challenge to petitioner's peremptory strike of white venireperson Mary Visintainer. (Doc. 1 at 7.)

During voir dire, petitioner's trial counsel had the following conversation with Visintainer:

> [DEFENSE COUNSEL]: Ms. Visintainer, I was going to ask you a question. You said yesterday that you had dealt with individuals with learning disabilities?
>
> [VISINTAINER]: Right.
>
> [DEFENSE COUNSEL]: That is sometimes a — a blanket description. That actually is probably overused in a blanket description because you probably deal with individuals that have a wide range of — of abilities?
>
> [VISINTAINER]: Disability.
>
> [DEFENSE COUNSEL]: Some — some, exceeding hours in some areas. But others, the reason that you're dealing with them might not be —

|                      | might have to be dealt with in a special way, right?                                                                                                                                                                                                                                                                                                                     |
| -------------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| [VISINTAINER]:       | Right.                                                                                                                                                                                                                                                                                                                                                                 |
| [DEFENSE COUNSEL]:   | Okay. And times obviously, that may be someone's verbal skills, is that correct?                                                                                                                                                                                                                                                                                       |
| [VISINTAINER]:       | Correct.                                                                                                                                                                                                                                                                                                                                                               |
| [DEFENSE COUNSEL]:   | And their ability to articulate their point or not?                                                                                                                                                                                                                                                                                                                    |
| [VISINTAINER]:       | That's right.                                                                                                                                                                                                                                                                                                                                                          |
| [DEFENSE COUNSEL]:   | And obviously, that's one possibility of a reason that a person may choose not to testify is purely because of their ability to make their point?                                                                                                                                                                                                                      |
| [VISINTAINER]:       | Yes, it could be.                                                                                                                                                                                                                                                                                                                                                      |
| [DEFENSE COUNSEL]:   | Also, you have individuals that may, with regard to being cross-examined by somebody with as much experience as [the prosecutor]?                                                                                                                                                                                                                                      |
| [VISINTAINER]:       | That could be.                                                                                                                                                                                                                                                                                                                                                         |
| [DEFENSE COUNSEL]:   | Factoring that in as I had said in the beginning is because they also had something to hide?                                                                                                                                                                                                                                                                           |
| [VISINTAINER]:       | Could be.                                                                                                                                                                                                                                                                                                                                                              |
| [DEFENSE COUNSEL]:   | Whatever the factors that maybe that you think of or not think of and I think, everyone agrees with [another venireperson] that in the back of your mind you're going to be quizzable about what's going on. You're quizzable as to why we're standing — still standing up here talking to you at this late hour. But the bottom line is whether or not you believe the state is proven their case beyond a reasonable doubt and if they haven't your verdict would be? |

| | | |
|---|---|---|
| [VISINTAINER]: | | Not guilty. |
| [DEFENSE COUNSEL]: | | And any other factor that may come in or not or whatever, you would be able to not hold that against [petitioner]? |
| [VISINTAINER]: | | Right. |
| [DEFENSE COUNSEL]: | | Okay. And whether — whatever my decision might be, you're not going to hold that against [petitioner]? |
| [VISINTAINER]: | | Right. |

(Doc. 14, Ex. G at 270-73.)

When petitioner's defense counsel used a peremptory strike against venireperson Visintainer, the state prosecutor made a Batson challenge, noting that all of petitioner's peremptory strikes were used against white venirepersons. (Id. at 324.) Petitioner's counsel explained that he struck Visintainer because he thought that his questioning might have offended her. (Id. at 326-27.) In response, the trial court stated that the court's notes did not support any of the things mentioned by defense counsel and found the explanation to be speculative. The court sustained the prosecutor's objection to petitioner's striking of venireperson Visintainer. (Id. at 332.)

On direct appeal, the Missouri Court of Appeals applied the three-step Batson test. State v. Miller, 162 S.W.3d at 15-16; Doc. 14, Ex. Q at 14-15. The court noted that the state satisfied the first part of the test when the prosecutor noted that all of petitioner's peremptory strikes were of white venirepersons. 162 S.W.3d at 15-16. The court found that petitioner satisfied the second part of the test by providing a racially-neutral explanation for his strike. The court then examined whether this explanation was pretextual and found that there was no objective indication that Visintainer was offended by defense counsel's questions. The Missouri Court of Appeals ruled:

> We are not left with the definite and firm conviction from the evidence as a whole that a mistake has been made. Because of the great deference accorded trial courts in their determination of Batson challenges based on the totality of facts and circumstances, we cannot conclude that the trial

court clearly erred in sustaining the State's Batson challenge
to [petitioner's] peremptory strike of Visintainer.

Id. at 16.

The Eighth Circuit has held that, as to § 2254 habeas proceedings, each step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence. Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003). The rulings by the trial court and by the Missouri Court of Appeals were reasonable, and petitioner has not adequately rebutted the state court's factual findings. Therefore, Ground 1 should be denied.

### 2. Ground 2

In Ground 2, petitioner claims that the trial court erred in overruling his Batson challenge to the state's peremptory strikes of two black venirepersons, Shirley Alexander and Amazie McCain.

During voir dire, petitioner's counsel raised a Batson challenge to the state's peremptory strikes of Alexander and McCain. As for Alexander, the prosecutor explained that he struck her because she seemed bored by the proceedings, yawned once or twice, and at one point rolled her eyes and looked disgusted. (Doc. 14, Ex. G at 314-15.) The prosecutor also noted that, other than raising her hand to general questions, she did not participate in voir dire in any way. (Id.) The prosecutor stated that he struck McCain for the same reasons as Alexander, and that he did not think either venireperson would make a good juror for either side. (Id. at 316-17.) The trial court found that these peremptory strikes were proper, well-founded, and based on reasons that had nothing to do with the race of the panel members. (Id. at 323.)

On direct appeal, the Missouri Court of Appeals found that the first two steps of the Batson test were satisfied. State v. Miller, 162 S.W.3d at 15-16; Doc. 14, Ex. Q at 12. The court noted that there were no similarly situated venirepersons, and that inattentiveness, demeanor, and attitude are proper explanations for exercising a peremptory challenge. State v. Miller, 162 S.W.3d at 16-17; Doc. 14, Ex. Q at 13. However, petitioner did not satisfy the third step of the Batson test;

state's challenge did not appear pretextual. State v. Miller, 162 S.W.3d at 17.

Here, petitioner has not challenged the state courts' finding that jurors Alexander and McCain appeared disinterested, tired, or disgusted. These are sufficient bases to withstand a Batson challenge. E.g., United States v. Jenkins, 52 F.3d 743, 747 (8th Cir. 1995) (challenge to jurors that appeared disinterested upheld). The Missouri courts' decisions on this ground were reasonable factually and as a matter of law.

For these reasons, Ground 2 should be denied.

**GROUND 3**

In Ground 3, petitioner claims that the state committed a Brady violation by not disclosing to the defense all of the relevant photo spreads and related police reports, specifically a photo spread he alleges was shown to witnesses the evening of the crime, in advance of photo displays to witnesses the next day which were testified about at trial. (Doc. 11, Ex. A at 25-26.) Under the Constitution, the state must disclose evidence favorable to the defense. Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

In denying petitioner's motion for post-conviction relief, the Missouri Circuit Court found:

> [N]o evidence was produced or adduced at the evidentiary hearing that there were additional lineups or photo spreads. Further there is no evidence that there was exculpatory evidence which was not produced by the State. Counsel filed a Request for Discovery including exculpatory materials as had [petitioner's] prior counsel in this case. [Petitioner's] counsel testified that he had no reason to believe there was additional information.

(Doc. 11, Ex. A at 145.)

On appeal from the denial of post-conviction relief, the Missouri Court of Appeals denied this ground on the merits:

> At the hearing, [petitioner] introduced the depositions of Ms. Alston and Ms. Spann. Ms. Alston testified that she identified [petitioner] as one of the men who attacked the victim from a photo spread at the police station, and that her only contact with the police, including the photo identification, occurred the night of the crime. Ms. Spann

> testified that she viewed pictures at the police station after the crime occurred, but she could not remember if she viewed the photos on the night of the murder or another occasion.
>
> Det. Tayborn testified at the evidentiary hearing that he interviewed a witness on the day after the murder, and based on the information provided to him, he prepared a photo spread that he showed to Ms. Alston and to Ms. Spann in the afternoon on the day after the murder. He testified that he only made one photo spread for the case, which he showed to both Ms. Alston and Ms. Spann the day after the murder, and he was not aware of any other photos that were shown to either of the women. He also testified that he was the primary investigating officer and that any information, including the presentation of an additional photo spread to the witnesses, would have been funneled through him. He also testified that no photo spread was prepared on the night of the murder because police did not have [petitioner's] name until the next day.
>
> The motion court found [petitioner's] allegation was without merit and that there were no lineups or photo spreads except the one shown to Ms. Alston and Ms. Spann the day after the murder. We defer to the motion court's determination of witness credibility. The court determined that there was no photo spread shown on the night of the murder. Since there was no photo spread from the night of the murder, counsel was not ineffective for failing to obtain records of it, and the state did not commit a Brady violation for failing to produce it.

(Doc. 11, Ex. E, Supplemental Memorandum at 7-8 (citation omitted).)

Petitioner does not challenge the findings of facts found by the Missouri courts. Based on these factual findings, there is no exculpatory evidence that the state failed to produce, and thus no Brady violation. The state courts' findings of fact are supported by the record their decisions were reasonable applications of federal law.

Therefore, Ground 3 should be denied.

**GROUNDS 4-5**

In Grounds 4 and 5, petitioner alleges that he received constitutionally ineffective assistance of trial counsel. In Strickland v. Washington, 466 U.S. 668, 686 (1984), the Supreme Court held that federal habeas corpus relief is available when "counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." The <u>Strickland</u> test requires two elements to prevail on a claim of ineffective assistance of counsel. First, a habeas petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. <u>Id.</u> at 687-88. The petitioner must overcome a strong presumption that counsel's performance was reasonable. <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 502 (8th Cir. 2007). Second, a habeas petitioner must demonstrate that he was actually prejudiced by counsel's dereliction of duty. <u>Strickland</u>, 466 U.S. at 687. In analyzing counsel's performance, every effort must be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time in question. <u>Tunstall v. Hopkins</u>, 306 F.3d 601, 606 (8th Cir. 2002).

**1. GROUND 4**

In Ground 4, petitioner claims that his trial counsel was constitutionally ineffective for failing to investigate and request any police reports or copies of photo spreads shown to witnesses the night of the murder. Petitioner claims that effective counsel would have reviewed Alston and Spann's depositions and realized that there was an earlier photo spread on the night of the incident. Petitioner claims that reasonably effective counsel would have then requested police reports or copies of the first photo spread to highlight inconsistencies in the state's case.

At trial, Alston testified that Detective Gregory Tayborn showed her a set of photographs the night of the shooting. (Doc. 14, Ex. H at 433.) Alston testified that at that time, she identified petitioner, then signed and possibly dated the photograph. (<u>Id.</u> at 435, 442.) At trial, she identified the photo spread, including her signature, the date, and time, which was July 14, 2001 at 3:20 p.m., <u>the day after the murder</u>. (<u>Id.</u> at 444.) After seeing her signature, she maintained that she first saw a photo spread the night of the murder and that this might have been a different spread. (<u>Id.</u> at 445.)

During a bench conference, petitioner's counsel and the state prosecutor agreed that Alston was wrong about the day she saw the photo spread. (Id. at 438.) At the bench conference, petitioner's counsel suggested that this mistake showed her unreliability as a witness. (Id.) On cross-examination, Alston testified that she met with police the day after the murder, during which time she saw a photo spread, identified petitioner, and signed and dated the photograph at 3:30 p.m. (Id. at 480-84.)

At trial, Spann testified that she was shown a photo spread either the night of the murder or the next day, during which she identified petitioner as possibly being the murderer. (Id. at 544-45, 556.) In a deposition after the trial, Spann testified that the night of the shooting, she was shown a photo spread and was unable to identify the shooter. (Doc. 11, Ex. A at 81-83.) In her post-trial deposition, Alston testified that she was shown one photo spread the night of the murder and identified petitioner immediately. (Doc. 11, Ex. A at 119, 124.)

In an affidavit after the trial, Detective Tayborn stated that he interviewed several witnesses on July 13, 2001, the day of the murder. (Id. at 50.) On July 14, 2001, the day after the murder, he assembled a photo lineup, including a picture of petitioner. (Id. at 50-51.) He presented this photo lineup to Alston and then to Spann. (Id. at 51.) He did not show Alston or Spann any other photo lineups on July 13, 2001, nor, to his knowledge, did any other member of the St. Louis Metropolitan Police Department. (Id.)

In the post-conviction motion hearing Det. Tayborn testified that he presented one photo lineup to Alston and Spann the day after the murder, and to his knowledge this was the only photo lineup that they saw. (Id., Ex. B at 38-40.) Also, in that hearing, Clinton Robert Wright, petitioner's trial counsel testified that after reviewing Spann and Alston's depositions, he did not bring any inconsistencies to the state's attention nor to the trial court's attention. (Id. 47-48.) He also testified that he received just one photo lineup and did not investigate or ask the state if there was more than one photo lineup prior to the trial. (Id. at 51-52.) He also testified that a

conversation at side bar with the prosecuting attorney and the court would have been a more effective way to handle the issue. (Id. at 49.)

The Circuit Court found that there was no additional lineup or photo spread or additional exculpatory evidence that was not produced by the state, and that petitioner's claim was without merit. (Doc. 11, Ex. A at 145.) The Missouri Court of Appeals affirmed the denial of the claim. (Id., Ex. E at 8.)

Petitioner has not established that his trial counsel's assistance was constitutionally ineffective. The Missouri courts found that petitioner's trial counsel received the only photo lineup and petitioner has not adequately rebutted the presumption that this factfinding is correct.

However, even if the first prong of the Strickland test is met, petitioner has not shown that counsel's deficient performance actually prejudiced him at trial. There is no evidence to show that another photo spread existed.

The decisions of the Missouri courts were reasonable factually and legally.

Ground 4 should be denied.

**2. GROUND 5**

In Ground 5, petitioner claims that his trial counsel was constitutionally ineffective for failing to contact Detective Rodebaugh as a potential trial witness. Petitioner claims that the failure to call Rodebaugh as a witness was prejudicial, because he would have corroborated the testimony that the victim said that "Elliot" shot him.

At trial, Alston testified that after the victim was shot, she heard him say, "Elliott did it, Elliott did it." (Doc. 14, Ex. H at 399.) She testified that she knew Elliot, the victim's sister's boyfriend, but that he was not present at the house anytime during the day of the shooting, including the time of the shooting. (Id.) Spann also testified at trial that she did not think that Elliott was present the night of the shooting. (Id. at 565-66.)

In the post-conviction hearing, Det. Rodebaugh testified that he was the first detective on the scene the night of the murder and that after asking the victim who shot him, the victim responded that "Elliott" shot him. (Doc. 11, Ex. B at 6, 16-17.) In that hearing, petitioner testified that it was his trial counsel's decision not to call Det. Rodebaugh as a witness at trial, and that he did not question this decision. (Id. at 30-31.) Petitioner's trial counsel testified that he was aware of Det. Rodebaugh and the fact that he overheard a statement made by the victim that his shooter was "Elliott." (Id. at 54-55.) He testified that he decided not to call Det. Rodebaugh at trial because the victim's statement was admitted into evidence through another source, and he felt that there might be a possible downside of Det. Rodebaugh bringing up additional unknown matters. (Id. at 55.) Counsel did not recall any conversation with petitioner about calling Det. Rodebaugh as a trial witness. (Id. at 59.)

The Missouri Circuit Court found that this ground for relief was without merit. (Doc. 11, Ex. A at 146-47.) The court found that because the evidence regarding the victim's identification of "Elliott" as his shooter was not disputed by the state, and was already testified to by the victim's girlfriend, the failure to have Det. Rodebaugh testify to the same thing was not prejudicial to petitioner. (Id.) The court found trial counsel's strategic reasons for not calling Det. Rodebaugh as a witness were valid. (Id. at 147.)

The Missouri Court of Appeals affirmed the circuit court's decision, holding that it was not unreasonable for trial counsel to make the strategic choice not to call Det. Rodebaugh to testify to the victim's statement. (Doc. 11, Ex. E at 5.)

Generally, trial counsel's decision not to call a witness to testify is often a matter of trial strategy. Battle v. Delo, 19 F.3d 1547, 1555 n.4 (8th Cir. 1994). This decision is usually left to the reasonable judgment of trial counsel, which ought not be lightly second-guessed by hindsight. Frank v. Brookhart, 877 F.2d 671, 674 (8th Cir. 1989).

The decisions of the Missouri courts were reasonable factually and as a matter of law. Therefore, Ground 5 should be denied.

## VI. CONCLUSION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the petition of Dwayne Miller for a writ of habeas corpus be denied.

The parties are advised that they have until close of business on September 4, 2012 to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 16, 2012.